# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KAVIEN MARTIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Case No.:** |
| ) | |
| **MILO'S TEA** ) | |
| **COMPANY, INC,** ) | |
| ) | **JURY DEMANDED** |
| **Defendant.** ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Kavien Martin ("Plaintiff" or "Martin"), by and through his undersigned counsel of record, and files this Complaint against Milo's Tea Company, Inc. ("Defendant" or "Milo's"). As grounds for this Complaint, Plaintiff states the following:

## JURISDICTION AND VENUE

1. This is a suit authorized and brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000(e) et seq., (hereinafter referred to as "Title VII").

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343.

3. The unlawful employment practices described herein were committed in Jefferson County, Alabama; as such, venue lies in the United States District Court

for the Northern District of Alabama, Southern Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is a citizen of the United States of America, who currently resides in Rancho Cucamonga, California.

5. Plaintiff is over the age of nineteen (19) years.

6. Defendant is an employer, in the State of Alabama, within the meaning of 42 U.S.C. § 12111(5) in that it engages in an industry affecting commerce and employed fifteen (15) or more employees for the requisite duration.

7. During all times relevant to this Complaint, Defendant conducted business throughout Alabama, with a physical location in Jefferson County, Alabama, with an address of 3112 Dublin Lane Bessemer, Alabama 35022.

## ADMINISTRATIVE EXHAUSTION

8. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), and the EEOC received it on July 11, 2022. Charge No. 420-2022-02633 (the "Charge") alleged that Plaintiff was subjected to discrimination based on his race in violation of Title VII of the Civil Rights Act of 1964. (See **Exhibit A**).

9. The EEOC issued a Dismissal and Notice of Rights (the "RTS") for the Charge on January 19, 2023. (See **Exhibit B**).

10. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the RTS.

11. Plaintiff has thus exhausted all administrative remedies available prior to filing this Complaint.

## FACTS

12. Martin is African American and a member of a protected class.

13. In or around November 2021, Martin submitted an online application for consideration in response to Defendant's advertisement of an available Executive Vice President Operations / Chief Operations Officer ("COO") position.

14. Subsequently, in or around December 2021, Martin interviewed with Defendant's Director of Talent, Ms. Amy Schwartz ("Schwartz").

15. During the interview, Schwartz explained to Martin that all current members of Milo's executive management team ("C-Suite") had a relationship with Defendant prior to being hired.

16. Further, Schwartz told Martin, "recruiting for the C-Suite is a new process for Milo's."

17. Between January 2022 and March 2022, Martin participated in several additional interviews conducted by Defendant, as well as completed a series of assessments pertaining to his leadership, behavioral, and cognitive abilities.

18. On or about March 1, 2022, Milo's Chief Executive Officer ("CEO"), Ms. Patricia Wallwork ("Wallwork") verbally offered Martin the COO position.

19. While excited to receive the offer, Martin had serious reservations about leaving the stable, executive level position in which he was entrenched.

20. Before accepting the offer, Martin shared his specific concerns with Wallwork and explicitly requested that Milo's contractually agree to provide him with an employment agreement that would include a defined severance payment, should his employment be terminated without cause.

21. Wallwork explicitly denied Martin's request, stating, "This is Milo's, a family business around for seventy-five years and we build our legacy on trust. I trust you and need you to trust us. If we get sideways somehow, we will take care of you, so don't worry."

22. Thereafter, in express reliance on Wallwork's promises, Martin formally agreed to accept the COO position on or about March 3, 2022.

23. Martin began actively working as COO for Milo's on or about April 11, 2022.

24. Excluding Martin, Milo's C-Suite team included Wallwork, Mr. Houston Cook ("Cook"), Chief Financial Officer ("CFO"), Ms. Caroline Henderson ("Henderson"), Chief Commercial Officer ("CCO"), Mr. Ryan Faught ("Faught")

Vice President of People, and Ms. Allison Taylor ("Taylor"), Executive Vice President Legal.

25. For the duration of Martin's employment, all other members of Milo's C-Suite team were Caucasian.

26. Immediately upon starting in his role as COO, and for the duration of his employment, Martin was ostracized by the Caucasian members of Milo's C-Suite team.

27. Martin was denied support and consideration provided to Caucasian members of Milo's C-Suite team.

28. Martin's communication attempts with the Caucasian members of Milo's C-suite team were ignored and/or unreciprocated.

29. Martin was intentionally excluded from meetings, luncheons, and social events to which all Caucasian C-Suite team members were invited.

30. On or about May 24, 2022, after only six (6) weeks of active employment, Faught notified Martin that his employment with Milo's was being terminated.

31. Prior to being notified of the termination of his employment, Martin received no communication from his direct supervisor, Wallwork, that there was an issue with his job performance or that his employment was in jeopardy.

32. Prior to being notified of the termination of his employment, Martin received no formal disciplinary warning from Defendant communicating that there was an issue with his job performance or that his employment was in jeopardy.

33. Faught advised Martin that the termination of his employment was effective May 27, 2022.

34. When notifying Martin of the termination of his employment, Faught told Martin, "this is a no cause, no fault termination."

35. The decision to terminate Martin's employment was made by Wallwork, with the approval of Milo's C-Suite team.

**COUNT I - RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

36. Martin is African American and a member of a protected class.

37. In or around November 2021, Martin submitted an online application for consideration in response to Defendant's advertisement of an available Executive Vice President Operations / COO position.

38. Subsequently, in or around December 2021, Martin interviewed with Defendant's Director of Talent, Schwartz.

39. During the interview, Schwartz explained to Martin that all current members of Milo's C-Suite team had a relationship with Defendant prior to being hired.

40. On or about March 1, 2022, Milo's CEO, Wallwork verbally offered Martin the COO position.

41. Martin began actively working as COO for Milo's on or about April 11, 2022.

42. For the duration of Martin's employment, all other members of Milo's C-Suite team were Caucasian.

43. Immediately upon starting in his role as COO, and for the duration of his employment, Martin was ostracized by the Caucasian members of Milo's C-Suite team.

44. Martin was denied support and consideration provided to Caucasian members of Milo's C-Suite team.

45. Martin's communication attempts with the Caucasian members of Milo's C-suite team were ignored and/or unreciprocated.

46. Martin was intentionally excluded from meetings, luncheons, and social events to which all Caucasian C-Suite team members were invited.

47. On or about May 24, 2022, after only six (6) weeks of active employment, Faught notified Martin that his employment with Milo's was being terminated.

48. Prior to being notified of the termination of his employment, Martin received no communication from his direct supervisor, Wallwork, that there was an issue with his job performance or that his employment was in jeopardy.

49. Prior to being notified of the termination of his employment, Martin received no formal disciplinary warning from Defendant communicating that there was an issue with his job performance or that his employment was in jeopardy.

50. Faught advised Martin that the termination of his employment was effective May 27, 2022.

51. When notifying Martin of the termination of his employment, Faught told Martin, "this is a no cause, no fault termination."

52. The decision to terminate Martin's employment was made by Wallwork, with the approval of Milo's C-Suite team.

53. Martin was qualified for his position with Defendant.

54. However, Martin received disparate treatment from members of Milo's all Caucasian C-Suite team which ultimately led to termination of Martin's employment.

55. Defendant terminated Martin's employment because of his race.

56. As a result of Defendant's conduct, Martin was deprived of income and benefits associated with his employment. The conduct described herein also caused

Martin emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT II – FRAUDULENT INDUCEMENT

57. In or around November 2021, Martin submitted an online application for consideration in response to Defendant's advertisement of an available Executive Vice President Operations / COO position.

58. Subsequently, in or around December 2021, Martin interviewed with Defendant's Director of Talent, Schwartz.

59. During the interview, Schwartz explained to Martin that all current members of Milo's C-Suite team had a relationship with Defendant prior to being hired.

60. Further, Schwartz told Martin, "recruiting for the C-Suite is a new process for Milo's."

61. Between January 2022 and March 2022, Martin participated in several additional interviews conducted by Defendant, as well as completed a series of assessments pertaining to his leadership, behavioral, and cognitive abilities.

62. On or about March 1, 2022, Milo's CEO, Wallwork verbally offered Martin the COO position.

63. While excited to receive the offer, Martin had serious reservations about leaving the stable, executive level position in which he was entrenched.

64. Before accepting the offer, Martin shared his specific concerns with Wallwork and explicitly requested that Milo's contractually agree to provide him with a defined severance payment should his employment be terminated without cause.

65. Wallwork explicitly denied Martin's request, stating, "This is Milo's, a family business around for seventy-five years and we build our legacy on trust. I trust you and need you to trust us. If we get sideways somehow, we will take care of you, so don't worry."

66. Thereafter, in express reliance on Wallwork's promises, Martin formally agreed to accept the COO position on or about March 3, 2022.

67. Martin began actively working as COO for Milo's on or about April 11, 2022.

68. Martin was intentionally excluded from meetings, luncheons, and social events to which all Caucasian C-Suite team members were invited.

69. On or about May 24, 2022, after only six (6) weeks of active employment, Faught notified Martin that his employment with Milo's was being terminated.

70. Prior to being notified of the termination of his employment, Martin received no communication from his direct supervisor, Wallwork, that there was an issue with his job performance or that his employment was in jeopardy.

71. Prior to being notified of the termination of his employment, Martin received no formal disciplinary warning from Defendant communicating that there was an issue with his job performance or that his employment was in jeopardy.

72. Faught advised Martin that the termination of his employment was effective May 27, 2022.

73. When notifying Martin of the termination of his employment, Faught told Martin, "this is a no cause, no fault termination."

74. The decision to terminate Martin's employment was made by Wallwork, with the approval of Milo's C-Suite team.

75. Defendant made an intentional misrepresentation to Martin when hiring Martin and communicating to him that he did not need an employment agreement, because if things went wrong, Defendant would take care of him.

76. Martin relied on these misrepresentations to his detriment.

77. Defendant made the aforementioned representations in order to mislead Martin by encouraging Martin to make a move from California to Alabama, to terminate his executive level position in California, and to fraudulently induce Martin into accepting the position and begin working with Defendant.

78. As a result of Defendant's conduct and Martin's detrimental reliance, Martin was injured and suffered damages by leaving his employment and being deprived of income and benefits associated with his employment. The conduct

described above also caused Martin emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

**WHEREFORE,** Plaintiff respectfully requests this Court grant to Plaintiff the following:

A. Back pay for lost income and any other compensatory damages;

B. Reinstatement or front pay if the Court determines reinstatement is impractical;

C. Liquidated damages equal to the amount of back pay;

D. Punitive damages;

E. A reasonable attorneys' fee;

F. Plaintiff's costs and expenses;

G. Interest on all monies owed; and

H. Any and all other relief the Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted on this the 19th day of April 2023.

Respectfully submitted,

s/ *Mitchell G. Allen*
Mitchell G. Allen (ASB-6947-A54M)
Meagan M. Corcoran (ASB-4976-D34B)
*Attorneys for Plaintiff*

**Michel | King**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Telephone: (205) 980-5700
Facsimile:  (205) 994-2819
Meagan@wmalabamalaw.com
Mitch@wmalabamalaw.com


**DEFENDANT WILL BE SERVED VIA PROCESS SERVER AT THE FOLLOWING ADDRESS:**

Milos Tea Company, Inc.
c/o r/a Patricia C. Wallwork
3112 Dublin Lane
Bessemer, Alabama 35022



                                   s/ *Mitchell G. Allen*
                                   Attorney for Plaintiff